James Lawrence LATIMER,
Petitioner–Appellant,

v.

Sherry BURT, Warden, Respondent–
Appellee.

No. 02–2221.

United States Court of Appeals,
Sixth Circuit.

May 14, 2004.

428

N.C. Deday LaRene, LaRene & Kriger, Detroit, MI, for Petitioner–Appellant.

Laura Graves Moody, Brenda E. Turner, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before GUY, GILMAN, and COOK, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

A Michigan jury found James Lawrence Latimer guilty of first-degree murder and of using a firearm during the commission of a felony. He was sentenced to life in prison without the possibility of parole for the murder conviction and an additional two years for the use of the firearm. The Michigan Court of Appeals affirmed Latimer's conviction, and his petition for leave to appeal was denied by the Michigan Supreme Court. Latimer then timely filed a petition for a writ of habeas corpus in the district court, arguing that the state trial court violated his constitutional rights by limiting his cross-examination of three key witnesses and refusing to specifically instruct the jury regarding their credibility. The district court denied the petition. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The prosecution's case against Latimer was based primarily upon the testimony of three witnesses: John Richardson, William Heath, and Matthew Dumas. The only

witness to the shooting was Richardson, a mutual friend of Latimer and Robert Minauro. the victim in this case. Richardson testified that he acted as a middleman for a loan of $5,000 from Minauro to Latimer for the purchase of LSD. Latimer did not have the money to repay Minauro a month later, so he proposed to satisfy the loan obligation by selling Minauro a large quantity of discounted marijuana instead. At the meeting for the marijuana sale in August of 1997. Latimer shot and killed Minauro.

The state contended that Minauro was shot while he was inspecting a box that purportedly contained the marijuana. Latimer, on the other hand, claimed that he shot Minauro in self-defense. The day after the shooting, Richardson gave a statement to the police in which he said that Latimer was not defending himself when he shot and killed Minauro. But Richardson did not mention either the drugs or the loan when he gave his statement because he wanted to avoid implicating himself in the criminal activity.

During Latimer's trial, the state trial court prohibited Latimer from cross-examining Richardson regarding the latter's testimony in an unrelated 1992 drug conspiracy trial in Iowa. Latimer contends that Richardson had falsely claimed to be an innocent bystander in the Iowa case, and that his prior testimony was therefore relevant to impeach his credibility in the present case, where Richardson again claimed to be an innocent bystander.

William Heath testified that he had been Latimer's prison cellmate in December of 1997. Latimer, according to Heath, repeatedly said that he shot Minauro in order to steal the money that Minauro had brought to the meeting for the purchase of the marijuana. Self-defense was never mentioned as a motive. At the time of Latimer's trial, Heath was the defendant in a separate criminal trial before the same judge. Heath was charged with conducting a criminal enterprise and with child sexual abuse, both arising from Heath's operation of an "adult entertainment" business that allegedly employed underage females. During Latimer's trial, the state court permitted defense counsel to cross-examine Heath regarding the existence of pending felony charges against him and the maximum possible penalties associated with those charges. But the court would not allow Latimer to inquire about the nature of Heath's business, the details of the pending felony charges, or his alleged "use of lies and deceit in the operation of his business."

The prosecution's third witness, Matthew Dumas, was a longtime acquaintance of Latimer. Dumas testified that Latimer had told him that Minauro was unarmed at the time of the shooting. Latimer asked the trial court for permission to cross-examine Dumas regarding "his numerous misdemeanors and petty offenses on the theory that Dumas was so frequently in front of the Oakland County Prosecutor that he might be trying to gain the latter's favor." But the trial court prohibited Latimer from asking Dumas about either his overall criminal record or the allegedly false statements that Dumas had made to various judges in connection with his prior offenses.

At the close of proof, the trial court gave standard witness-credibility instructions to the jury. The jury was instructed to consider prior inconsistent statements to evaluate credibility, as well as any interest, bias, or personal interest in the case, or special reasons to lie. But the trial court refused Latimer's request to give specific instructions regarding the credibility of accomplices and informants.

## II.   ANALYSIS

### A.   Standard of review

We review de novo the district court's legal conclusions, but we will set aside its findings of fact only if they are clearly erroneous. *Lott v. Coyle*, 261 F.3d 594, 606 (6th. Cir.2001). The standard of review for state-court determinations, on the other hand, is dictated by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254(d). AEDPA applies in the present case because Latimer filed his habeas petition in September of 2000, well after the Act's effective date of April 24, 1996. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997) (noting that AEDPA applies to habeas petitions filed after the Act's effective date). The Act provides in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In contrast, an "unreasonable application" of federal law occurs where a "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

### B.   The trial court's restrictions upon Latimer's cross-examination of witnesses

The Confrontation Clause of the Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Under the Confrontation Clause, as interpreted by the Supreme Court, "cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs v. Collins*, 226 F.3d 728, 737 (6th Cir.2000) (citing two Supreme Court cases). In *Boggs*, for example, the defendant in a rape case attempted to cross-examine the victim regarding an allegedly false accusation of rape that she had made against another man approximately one month before she accused the defendant. *Id.* at 733. The trial court sustained the prosecutor's objection to that line of questioning. *Id.* On appeal, this court held that the defendant's right of confrontation had not been violated because his "purpose in introducing the alleged prior false accusation was to attack

[the victim's] general credibility." *Id.* at 739.

### 1. Allegedly false, prior statements by the witnesses

■ *Boggs* clearly holds that the Confrontation Clause does not give defendants the right to cross-examine witnesses regarding allegedly false statements where the defendant's theory of admissibility is that "if [the witness] lied or fabricated once, [he or] she would do so again." *Id.* In the present case, then, Latimer's right of confrontation was not violated by the trial court's decision to prohibit him from conducting cross-examination regarding Richardson's testimony in the Iowa case. Heath's "use of lies and deceit in the operation of his business," or Dumas's allegedly false statements to various judges. None of these prior statements demonstrates the existence of "bias, motive or prejudice" on the part of the witnesses. Instead, the only viable theory of admissibility is that because the witnesses lied once, they would do so again.

### 2. Pending criminal charges against Heath

■ As for the pending criminal charges against Heath, the district court correctly observed that

> [b]y allowing cross-examination about the existence of the charges and the associated criminal penalties, the trial court allowed the jury to know why Heath might be testifying for the prosecution—in return for leniency on those charges—and how strongly those pending charges might be motivating him, in terms of the potential prison time he could be avoiding.... [A]ny further detail about the events underlying those pending charges would not serve the function of illustrating Heath's pro-prosecution bias, but rather would merely

serve to impugn Heath's general credibility.

In sum, the trial court's decision to limit the cross-examination of Heath did not violate Latimer's rights under the Confrontation Clause.

### 3. Dumas's criminal record

■ Latimer also challenges the trial court's decision to prohibit him from cross-examining Dumas regarding the latter's "frequent troubles with the Oakland County Prosecutor." He argues that Dumas's recidivist behavior created a motive for Dumas to lie in the present case because helping the prosecutor's office would have been "like [putting] money in the bank." The district court, however, explained why this "speculative" theory of Dumas's purported motive does not entitle Latimer to habeas relief pursuant to AEDPA:

> Dumas had no charges pending against him at the time of his testimony, so he had no existing motive to ingratiate himself with the prosecution. [Latimer's] theory that Dumas was a recidivist criminal and so perpetually motivated to curry favor with the prosecution is too speculative to qualify for relief. Although, in Dumas's case, [Latimer] technically has a theory of motive, it is one based entirely on guesswork: that Dumas *might* one day be back in front of the Oakland County Prosecutor, and so he was testifying falsely to prospectively curry favor with the prosecution. [Latimer] has not shown that prohibiting such a speculative question violated clearly established federal law, since the Supreme Court cases he relies on all involved present, existing impetuses for helping the prosecution. [*Delaware v.] Van Arsdall,* 475 U.S. [673,] 676, 106 S.Ct. 1431, 89 L.Ed.2d 674 [(1986)](witness testified in exchange for having drunkenness charge dropped by prosecution); *Davis [v. Alaska],* 415 U.S. [308,] 311, 94 S.Ct.

1105, 39 L.Ed.2d 347 [(1974)] (witness helped police while on probation for burglary); *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 218, 75 L.Ed. 624 (1931) ("petitioner was entitled to show by cross-examination that [witness's] testimony was affected by fear or favor *growing out of his detention*") (emphasis added).

■ In addition to the fact that the restriction upon the cross-examination of Dumas was not "contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), Latimer is not entitled to habeas relief on this issue because any constitutional violation was harmless beyond a reasonable doubt. *See Van Arsdall,* 475 U.S. at 684 (holding that Confrontation Clause violations are subject to harmlesserror analysis, and that all courts making that determination should consider "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case").

The trial court permitted Latimer to cross-examine Dumas regarding related topics, including "offenses for which he was incarcerated at the time [Latimer] made the statements to him, his status at the time of [Latimer's] trial, whether he expected anything from the prosecutor's office, and his future expectations about being back in the court system." Dumas's testimony, moreover, was cumulative. His only material testimony was that Latimer had told him that Minauro was unarmed when Latimer shot him. But Richardson and Heath said essentially the same thing when they testified that the shooting was not in self-defense. Any error caused by limiting Latimer's cross-examination of Dumas was therefore harmless beyond a reasonable doubt.

## C. The trial court's refusal to specifically instruct the jury regarding the credibility of accomplices and informants who serve as witnesses

■ In *United States v. Carr,* 5 F.3d 986 (6th Cir.1993), this court held that a district court's refusal to give a requested jury instruction is not reversible error so long as "the jury charge as a whole . . . fairly and adequately submits the issues and the law to the jury." *Id.* at 992. "A refusal to give requested instructions is reversible error only if three conditions are met: (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *Id.*

In the present case, the government points out that "[t]he jury was instructed to consider prior inconsistent statements to evaluate credibility, as well as any interest, bias, or personal interest in the case, or special reasons to lie." The requested instructions were therefore substantially covered by the delivered charges, which "alerted the jury to the various considerations that it should take into account in weighing testimony, [giving the jury] an ample basis for rejecting the testimony of the accomplice [and informant] witnesses if it had chosen to do so." *Id.* Latimer, moreover, presented no proof, and did not argue, that any of the witnesses in question were "accomplices," so the trial court's refusal to give the instruction regarding accomplices did not impair his theory of the case.

A trial court's refusal to give a specific jury instruction entitles a petitioner to habeas relief only if the omission "so infected

the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (quotation marks omitted). In the present case, the state trial court's failure to give specific instructions regarding accomplice and informant credibility would not have constituted reversible error even if this were the direct appeal of a federal case, so relief is certainly not appropriate on a petition for habeas corpus.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.