RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

QUINCY MARQUICE TAYLOR,

*Defendant-Appellant*.

> No. 23-5834

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:22-cr-00137-1—Danny C. Reeves, District Judge.

Decided and Filed:  February 7, 2025

Before: COLE, WHITE, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Steven D. Jaeger, HEMMER WESSELS MCMURTRY, Ft. Mitchell, Kentucky, for Appellant.  Charles P. Wisdom Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

MATHIS, Circuit Judge.  A jury convicted Quincy Taylor of possession of a controlled substance with intent to distribute, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm.  On appeal, Taylor challenges the district court's limitation of his cross-examination of one of the government's witnesses under the Confrontation Clause of the Sixth Amendment.  Taylor also argues that the district court violated his due-process and jury-trial rights by not requiring the jury to find that Taylor committed certain prior

offenses on different occasions for purposes of determining whether the Armed Career Criminal Act ("ACCA") should have applied to him.  Because the court's cross-examination limitations violated Taylor's constitutional right to confrontation and were not harmless, we reverse Taylor's convictions and remand for a new trial.

## I.

In the early morning hours of October 27, 2021, William Howell, a freight hauler, stopped on the side of the road to rest.  Suddenly, he heard "a car squealing tires" and saw a car hit a ditch and flip over.  R. 84, PageID 501.  Howell got out of his truck and called 911.  As he approached the car, he saw Quincy Taylor struggling to get out.  Taylor got out of the car and told Howell that he was not harmed.  Taylor then asked Howell if he would take "a small bag, like a sock cap, [that] was full of" what "appeared to be a small handgun, revolver, with some marijuana on top of it."  *Id.* at 504, 512.

After Howell refused, Taylor hid the bag on the side of the road.  Taylor asked Howell for a ride, and Howell declined.  Soon after, Taylor flagged down the driver of a white Camaro.  After speaking briefly with the driver, Taylor got in the Camaro and left the scene.  Howell waited for the police to arrive, told them about the accident, and pointed out the bag.  Inside the bag, officers found cocaine, a loaded revolver, and ammunition.  Officers later determined that the wrecked vehicle was registered to Taylor.

A grand jury indicted Taylor for possession with intent to distribute a mixture or substance containing cocaine, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm.  The case proceeded to trial.

Howell was the government's star witness, as he testified that Taylor "had the bag [containing the drugs and firearm] in his hand" when he exited his vehicle.  *Id.* at 504.  Howell's testimony was the only evidence presented at trial that connected Taylor with the bag.

By the time of trial, Howell had engaged in some criminal conduct of his own that Taylor wanted to question Howell about.  In March 2022, several months after the incident that led to

the federal charges against Taylor, Howell was charged in state court with felony possession of a controlled substance and two misdemeanor offenses.

In July 2022, while those charges were pending, federal agents met with Howell to interview him about the incident with Taylor. Howell brought up his pending state charges and asked the agents what "benefits" he could "get" for cooperating with their investigation, expressing concern about his recent interactions with police. *Id.* at 486–87, 490. The agents never promised Howell anything and told him he could be subpoenaed for the trial if he did not cooperate. That said, one agent told Howell to talk to his lawyer because it was possible to receive a benefit for assisting law enforcement.

In November 2022, Howell pleaded guilty to the felony and misdemeanor charges and entered into a pre-trial diversion agreement. But Howell violated the diversion agreement when he was charged in state court with being a felon in possession of a firearm less than two months later. That said, according to Taylor's counsel, the state prosecutor conveyed to the government a willingness to dismiss the felon-in-possession charge and the revocation of the diversion agreement in part because Howell was cooperating with Taylor's prosecution. The federal prosecutor asserted that, based on his conversations with Howell's defense attorney, this willingness was not relayed to Howell.

The government moved in limine to exclude all evidence related to Howell's prior convictions and the pending felon-in-possession charge. Taylor countered that the prior felony conviction was admissible under Federal Rule of Evidence 609(a)(1). Taylor also argued that the pending charge showed Howell's potential bias toward the government.

The district court took the middle ground. It ruled that Taylor could ask if Howell had any felony convictions but could probe further only if Howell "open[ed] the door to such questioning." R. 37, PageID 123. The court further found Howell's pending felon-in-possession charge inadmissible under Rule 609 because that rule only applies to convictions.

On the first day of trial, Taylor reiterated his concerns about the restrictions the district court placed on his forthcoming cross-examination of Howell. Taylor stated that he wanted to introduce into evidence the recording of Howell's interview with the federal agents. And he

discussed the potential bias issues emanating from Howell's conviction, Howell's pending charge, and the state prosecutor's willingness to dismiss the pending charge and the revocation of the diversion agreement because of Howell's cooperation. But the district court stood by its original ruling, finding an insufficient "showing of bias to allow it to come in," and finding that the evidence would be more prejudicial than probative under Rule 403. R. 84, PageID 493.

Along with Howell, officer Nathaniel Church, officer Matt Hannan, special agent Lindsey Brewer, special agent Jason Moore, Jeremy Adams, and Sierra Creech testified for the government. Church testified about responding to Howell's 911 call, finding the bag on the side of the road, and interviewing Taylor after his arrest. Adams—the driver of the white Camaro—testified about giving Taylor a ride to a gas station after the accident. Adams also explained that, by the time they got to the gas station, Taylor had fallen asleep and would not awaken. Adams saw a police officer nearby and asked for help getting Taylor out of his car. Hannan, the officer who helped Adams, testified about his interaction with Taylor. Brewer is the federal agent who investigated Taylor's case. She spoke about the revolver that officers found inside the bag and explained that the wrecked vehicle belonged to Taylor. Creech, a forensic scientist specialist, testified that the powder found in the bag contained cocaine. And Moore, an agent with the Drug Enforcement Administration, testified that the amount of cocaine in the bag was consistent with drug trafficking.

A jury convicted Taylor of all three offenses. At sentencing, the court enhanced Taylor's sentence under the ACCA. Taylor timely appealed his convictions and sentence.

On appeal, Taylor makes two arguments. First, Taylor argues that the district court violated his Confrontation Clause rights when it limited his ability to cross-examine Howell. Second, Taylor argues that the district court violated his Fifth and Sixth Amendment rights when it did not allow the jury to decide whether his prior offenses occurred on different occasions under the ACCA. *See Erlinger v. United States*, 602 U.S. 821, 835 (2024) (holding that a jury must decide beyond a reasonable doubt whether a defendant's prior offenses occurred on separate occasions under the ACCA).

## II.

Taylor's Confrontation Clause argument resolves this appeal.  We review alleged violations of the Confrontation Clause de novo.  *United States v. Roberts*, 84 F.4th 659, 666 (6th Cir. 2023).  And if a constitutional violation occurred, we must conduct a harmless-error analysis.  *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010).

### A.

The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The opportunity to cross-examine a witness is "[t]he main and essential purpose of confrontation."  *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (quotation omitted).  "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."  *Id.* at 316.  It allows a defendant to "reveal[] possible biases, prejudices, or ulterior motives of the witness."  *Id.*  And the Supreme Court has recognized that exposing "a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17 (citation omitted).

A Confrontation Clause violation occurs when a court prohibits a defendant from "engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness."  *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).  Prototypical forms of bias include: (1) "the witness's criminal history or status as a parolee or probationer"; (2) "any immunity or plea deals" involving the witness; (3) the witness's "inconsistent statements"; and (4) "other prejudices, or ulterior motives," that can undermine the witness's reliability.  *Blackston v. Rapelje*, 780 F.3d 340, 349 (6th Cir. 2015) (citations and internal quotation marks omitted).  The Confrontation Clause protects this line of inquiry because "[t]he partiality of a witness . . . is always relevant as discrediting the witness and affecting the weight of his testimony."  *Davis*, 415 U.S. at 316 (internal quotation marks omitted).

As with most constitutional rights, the right to confront witnesses has limits.  A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise

inadmissible under standard rules of evidence." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014) (quotation omitted). And district courts have broad discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

We use a three-step process to analyze whether a defendant's confrontation rights have been violated. *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000). At the first step, we must decide whether the district court limited the defendant's ability to cross-examine a witness about his "bias, prejudice[,] or motive to testify." *Id.* If so, we move to the second step. At the second step, we consider whether, "despite the limits placed on otherwise permitted cross-examination," the jury still had "enough information . . . to assess the defense theory of bias or improper motive." *Id.* If the jury did not have enough information to assess the defense's theory, we move to the third step. The third step is "a balancing test" that weighs the government's interests against the defendant's right to confront adverse witnesses. *Id.*

### 1. Limitations on cross-examination

We start by considering if the district court limited Taylor's ability to cross-examine Howell about matters going to bias, prejudice, or his motivation to testify. Taylor sought to cross-examine Howell about aspects of his criminal history and about any benefits he received, or expected to receive, by testifying. Specifically, Taylor wanted to cross-examine Howell about his state felony conviction for possession of a controlled substance, his two state misdemeanor convictions, and his pending state charge for being a felon in possession of a firearm. Related to these offenses, Taylor sought to ask Howell about the state prosecutor's willingness to dismiss the revocation of the diversion agreement and dismiss the pending charge in part because of Howell's cooperation with Taylor's prosecution. Taylor also wanted to question Howell about asking federal agents what benefit he would receive when the agents interviewed him about his interactions with Taylor. And Taylor wanted to have the recording of Howell's interview with the agents admitted into evidence.

We can quickly discard two of Taylor's arguments. First, Taylor has made no argument before us that the district court erred by disallowing him from cross-examining Howell about his misdemeanor convictions. Thus, Taylor has forfeited the argument that this cross-examination limitation violated the Confrontation Clause. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009) ("To preserve [an] argument, . . . the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it."). Second, the district court's decision to preclude Taylor from offering into evidence the recording of Howell's interview with the federal agents was proper because the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam). Instead, courts generally satisfy the Confrontation Clause by giving defendants "a full and fair opportunity to probe and expose [testimonial] infirmities through cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam).

That leaves these subjects that Taylor sought to explore during cross-examination: (1) Howell's felony drug conviction, (2) Howell's then-pending felon-in-possession charge, and (3) potential benefits to Howell for his testimony.

To start, Howell's felony conviction falls squarely within the prototypical forms of bias that defendants can explore during cross-examination. *See Blackston*, 780 F.3d at 349; *see also Vasquez v. Jones*, 496 F.3d 564, 571 (6th Cir. 2007) ("Impeachment with prior crimes is precisely the 'otherwise appropriate' cross-examination permitted under *Van Arsdall*.").

Taylor's desire to cross-examine Howell about his felon-in-possession charge and potential benefits went to Howell's bias and motivation for testifying. When questioned by the federal agents, Howell asked twice what "benefits" he would "get" for his drug charge for cooperating in Taylor's prosecution. R. 84, PageID 486–87, 490. And the state prosecutor planned to dismiss the felon-in-possession charge in part because of Howell's cooperation in Taylor's case. What is more, the state prosecutor considered revoking Taylor's diversion agreement for the drug conviction after Howell was charged with being a felon in possession, but the prosecutor said to the government that he might drop the revocation matter against Howell as

well. *Id.* at 489. Whether preferential treatment influences a witness's testimony constitutes "core impeachment evidence." *United States v. Ralston*, 110 F.4th 909, 918 (6th Cir. 2024).

Yet the district court limited Taylor's cross-examination of Howell on these subjects. The court only allowed Taylor to ask if Howell had been convicted of a felony and if the federal agents who interviewed Howell promised him anything in connection with his testimony. Taylor could not ask about "the nature of the conviction." R. 37, PageID 123. Nor could he ask about Howell's felon-in-possession charge or the benefits the state prosecutor would give Howell related to his state offenses for cooperating with the federal prosecution against Taylor. And the district court did not allow Taylor to cross-examine Howell about seeking a benefit from the federal agents for providing them with information about his interactions with Taylor. The district court thus limited Taylor's ability to cross-examine Howell about matters going to bias, prejudice, or his motivation to testify.

### 2. Information available to the jury

Moving to the second step of the analysis, we consider whether, despite the limitations on cross-examination, the jury still had "enough information . . . to assess the defense theory of bias or improper motive." *Boggs*, 226 F.3d at 739. Because of the cross-examination restrictions, Taylor elicited only the following evidence related to Howell's criminal history and potential benefits:

> Q: And you do have a felony conviction on your record; is that right?
>
> A: Yes.
>
> . . .
>
> Q: In the meeting when you met last week with the prosecutor and [federal agent], were you promised anything –
>
> A: No, sir.
>
> Q: – from them in exchange for your testimony?
>
> A: Absolutely not.

R. 84, PageID 523. This testimony alone gave the jury little chance to assess Howell's bias, prejudice, or motivation for testifying. True, these questions attacked Howell's general

credibility. But the court's cross-examination limitations prevented Taylor from examining Howell's potential bias in seeking or receiving a benefit related to his felony conviction or pending felon-in-possession charge.

Consider *United States v. Callahan*. 801 F.3d 606 (6th Cir. 2015). There, the district court restricted the defendant from questioning a witness about one aspect of his criminal history—why the government charged him with a lesser charge of conspiracy to commit forced labor rather than the substantive offense. *Id.* at 624. We concluded that, despite this limitation on cross-examination, the jury had enough information to appraise the witness's bias and motivation. *Id.* Crucially, the court allowed defense counsel to cross-examine the witness "about a variety of impeaching information," including whether he would receive more time for the substantive offense than the lesser charge, and if he "expected a reduced sentence as a result of his cooperation." *Id.* Plus, the court allowed the defendant to question the witness about his past substance abuse, prior conviction, and plea agreement with the government. *Id.*

Similarly, in *United States v. Fields*, a witness had criminal charges pending against him when he testified at the defendant's trial. 763 F.3d 443, 464 (6th Cir. 2014). The court prevented the defendant from asking the witness about the crime underlying the pending charge. *Id.* Yet the court still allowed "extensive testimony regarding [the witness's] potential bias," including that he had prior convictions for burglary, theft, and possession of a controlled substance, and that "he was at that time facing charges in state court amounting to up to 96 years' imprisonment." *Id.* Considering the cross-examination allowed, we found that the jury had sufficient information to evaluate the witness's motive and bias. *Id.* at 464–65; *see also Stewart v. Wolfenbarger*, 468 F.3d 338, 349 (6th Cir. 2006) (finding no constitutional violation where "the information which [the defendant] wanted to use to impeach [the witness] was already known to the jury"); *Boggs*, 226 F.3d at 742–43 (finding no constitutional violation where the trial court granted "considerable leeway in cross-examining" the witness).

Here, though, the district court prevented Taylor from admitting any similar testimony targeted at Howell's bias or motive for testifying. The court permitted Taylor to ask whether Howell was a felon and whether the federal prosecutor and federal agents promised him anything related to his testimony. But that limited examination could not reveal the penalties Howell

faced for the charge, the penalty he received, and whether Howell sought or anticipated leniency in exchange for his cooperation in Taylor's prosecution.  *See Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984) ("[A] criminal defendant's inquiry into the issues of motive, bias, and prejudice is not limited to establishing the 'mere fact' of a witness' prior conviction; defense counsel may also question a witness concerning *why* he is biased." (internal citations omitted)); *Latimer v. Burt*, 98 F. App'x 427, 431 (6th Cir. 2004) (finding no constitutional violation where court limited cross-examination to the existence of pending charges and their penalties, because that information "allowed the jury to know why [the witness] might be testifying for the prosecution—in return for leniency on those charges—and how strongly those pending charges might be motivating him" (quotation omitted)).  The court also prohibited Taylor from asking about Howell's pending felon-in-possession charge, its potential impact on the diversion agreement he received for his felony conviction, and the state prosecutor's willingness to dismiss the charge based on Howell's cooperation in Taylor's prosecution.  Though the court allowed one question about bias—whether federal officials promised Howell anything in return for his testimony—the jury lacked vital information necessary to assess Howell's bias or motive for testifying.

### 3.     Competing interests

Because the jury had insufficient information to assess Taylor's theory about Howell's potential bias and motive for testifying, we proceed to the third step of the Confrontation Clause analysis.  This requires us to compare and weigh the government's interests against Taylor's interest in confronting and cross-examining Howell.

The government sought to prevent Taylor from questioning Howell about his criminal history to prevent unfair prejudice.  It argued that such questions would result in a "mini trial" on Howell's conduct, particularly regarding the "timeline of events."  R. 84, PageID 490, 492. Though certainly a valid government interest, *see, e.g.*, *Jordan v. Lebanon Corr. Inst.*, 675 F.3d 586, 595 (6th Cir. 2012), it does not outweigh Taylor's, *see Vasquez*, 496 F.3d at 573 ("[A] legitimate interest must be very substantial to trump the defendant's right to confront witnesses by traditional means.").  A defendant's interest in showing the bias of an adverse witness is often

"paramount." *Davis*, 415 U.S. at 319. And here, Taylor had a significant interest in exploring the bias and motive of the only eyewitness to the incident that led to federal charges against him.

Without Howell, the government's case against Taylor collapses. As the only evidence connecting Taylor to the contraband, the government depended heavily on Howell's cooperation and testimony. In *Davis*, for example, the trial court prohibited the defendant from questioning a "crucial witness" about his criminal record and probation status based on a state provision protecting juvenile offenders. 415 U.S. at 310–11. The Court concluded that the jury needed to hear the defendant's theory "so that they could make an informed judgment as to the weight to place on [the witness's] testimony which provided a crucial link in the proof [] of petitioner's act." *Id.* at 317 (internal quotation marks omitted). Here, Howell is a "crucial witness," and is in fact the *only* "link" proffered at trial between Taylor and the contraband that led to the federal charges. So Taylor had a significant interest in testing Howell's bias and motivation.

Despite the centrality of Howell's credibility, the government argued that Howell's criminal conduct had little probative value. It emphasized that Howell was convicted of possessing a controlled substance *after* Taylor's accident, and so the conviction "ha[d] very little bearing on Howell's character for truthfulness at the time of the vehicular collision and his interaction with police." R. 30, PageID 85–86. Maybe so—but this fact does not lessen the relevance of his prior conviction to either his bias or his motive to cooperate in the prosecution. *See Davis*, 415 U.S. at 316 (explaining that cross-examination tests a witness's credibility and truthfulness in relation to his testimony at trial).

As for the pending felon-in-possession charge, the government argued that it was unclear whether Howell knew that the state prosecutor planned to dismiss that charge in part because of Howell's cooperation in Taylor's prosecution. But what if Howell *did* know that the state prosecutor planned to drop the charges for his cooperation in Taylor's trial? That would be probative of Howell's motive for testifying as he did. *See Ralston*, 110 F.4th at 918. Thus, the government's interest in preventing undue prejudice did not outweigh Taylor's substantial interest in exploring Howell's potential bias.

\*      \*      \*

In sum, Taylor sought to cross-examine Howell about his bias and motive for testifying. Because of the district court's limitations on cross-examination, the jury lacked enough information to make "an informed judgment as to the weight to place on [Howell's] testimony." *Davis*, 415 U.S. at 317. And the government's interests in excluding the evidence did not outweigh Taylor's "paramount" interest in exploring Howell's potential bias. *Id.* at 319. The district court thus violated Taylor's confrontation right when it limited his ability to cross-examine Howell about his potential bias and motive in testifying.

**B.**

Determining that a constitutional violation occurred does not conclude our analysis. We will uphold Taylor's convictions if the constitutional error was harmless. *See Van Arsdall*, 475 U.S. at 684.

We consider several factors in conducting a harmless-error examination arising from a Confrontation Clause violation. These factors include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, . . . the overall strength of the prosecution's case." *Id.*

Almost every factor confirms reversible error here. First, there is no question that Howell's testimony was central to the prosecution. Second, the government introduced no other eyewitness testimony or physical evidence connecting Taylor with the contraband. *See Stevens*, 746 F.2d at 347 ("[F]ailure to permit cross-examination of a *key* government witness concerning bias, prejudice, or motive cannot be construed reasonably as harmless error."). Third, although the district court permitted Taylor to cross-examine Howell, it barred cross-examination on bias and motive for testifying as discussed above. Fourth, the strength of the government's case hinged on Howell's testimony.

In *Hargrave v. McKee*, the trial court limited the defendant's ability to cross-examine the only eyewitness to the alleged crime about her psychiatric condition. 248 F. App'x 718, 728 (6th Cir. 2007). We found that the court unconstitutionally limited cross-examination and that the error was not harmless. *Id.* We emphasized that the eyewitness's testimony "was integral to the prosecution's case" because she was "the only witness who could provide any testimony regarding two necessary elements of the crime." *Id.* Indeed, the government only had "scattered pieces of circumstantial evidence" besides the eyewitness's testimony. *Id.* at 729.

That same rationale applies here. The government presented no evidence corroborating Howell's testimony. And notably, Howell's testimony went to crucial elements of the crime: that Taylor possessed the bag containing drugs and a firearm. *See id.* at 728–29.

Because the Confrontation Clause violation was not harmless, Taylor is entitled to a new trial.

### III.

For these reasons, we **REVERSE** Taylor's convictions and **REMAND** to the district court for a new trial.[1]

---

[1]Because Taylor is entitled to a new trial for the Confrontation Clause violation, we need not consider his *Erlinger* challenge, except to note that the district court should follow *Erlinger* on remand.