RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

QUINCY MARQUICE TAYLOR,

*Defendant-Appellant.*

No. 25-6035

---

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:22-cr-00137-1—Danny C. Reeves, District Judge.

Decided and Filed:  June 16, 2026

Before:  COLE, WHITE, and MATHIS, Circuit Judges.

---

### COUNSEL

**ON BRIEF:**  Philip C. Lawson, TRUE GUARNIERI AYER, LLP, Frankfort, Kentucky, for Appellant.  Amanda Harris Huang, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

MATHIS, J., delivered the opinion of the court in which COLE and WHITE, JJ., concurred.  WHITE, J. (pg. 12), delivered a separate concurring opinion.

---

### OPINION

---

MATHIS, Circuit Judge.  Quincy Taylor once again appeals his convictions for possessing cocaine with intent to distribute, possessing a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm.  We reversed the convictions from his first trial after concluding that the district court violated his Confrontation Clause rights and

remanded for a new trial.  A new jury convicted him on all charges.  Taylor claims the district court violated his confrontation rights again.  We disagree, and so we affirm his convictions.

**I.**

We previously summarized the facts underlying this matter as follows:

In the early morning hours of October 27, 2021, William Howell, a freight hauler, stopped on the side of the road to rest.  Suddenly, he heard a car squealing tires and saw a car hit a ditch and flip over.  Howell got out of his truck and called 911. As he approached the car, he saw Quincy Taylor struggling to get out.  Taylor got out of the car and told Howell that he was not harmed.  Taylor then asked Howell if he would take a small bag, like a sock cap, that was full of what appeared to be a small handgun, revolver, with some marijuana on top of it.

After Howell refused, Taylor hid the bag on the side of the road.  Taylor asked Howell for a ride, and Howell declined.  Soon after, Taylor flagged down the driver of a white Camaro.  After speaking briefly with the driver, Taylor got in the Camaro and left the scene.  Howell waited for the police to arrive, told them about the accident, and pointed out the bag.  Inside the bag, officers found cocaine, a loaded revolver, and ammunition.  Officers later determined that the wrecked vehicle was registered to Taylor.

A grand jury indicted Taylor for possession with intent to distribute a mixture or substance containing cocaine, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm.  The case proceeded to trial.

Howell was the government's star witness, as he testified that Taylor had the bag containing the drugs and firearm in his hand when he exited his vehicle.  Howell's testimony was the only evidence presented at trial that connected Taylor with the bag.

*United States v. Taylor*, 127 F.4th 1008, 1011 (6th Cir. 2025) (citation modified).

A jury convicted Taylor of all three offenses.  *See id.* at 1012.  Just three days after Taylor's first trial, the state prosecutor dismissed Howell's felon-in-possession charge and dismissed the motion to revoke Howell's diversion agreement in his drug-possession case.  The prosecutor did not provide an explanation for doing so.  Howell went on to complete his pretrial diversion program, and the felony drug-possession conviction (along with two related misdemeanors) was expunged from his record.

Taylor appealed, claiming that the district court violated his confrontation rights by limiting his ability to cross-examine Howell regarding: (1) Howell's felony drug-possession conviction, (2) Howell's then-pending felon-in-possession of a firearm charge, and (3) potential benefits for testifying. *Id.* at 1014. We agreed, concluding that the district court should not have improperly limited Taylor's "ability to cross-examine Howell about matters going to bias, prejudice, or his motivation to testify," *id.* at 1015, and that the limitation prevented the jury from having "enough information to make an informed judgment as to the weight to place on Howell's testimony," *id.* at 1017 (citation modified).

**A.**

On remand, Taylor sought more information about Howell's criminal conduct by serving the Kentucky Administrative Office of the Courts (AOC) and the Gallatin Circuit Court Clerk's Office with subpoenas duces tecum, under Federal Rule of Criminal Procedure 17, requiring production of the complete court file for Howell's expunged 2022 felony drug-possession case. In response, the Gallatin Circuit Court Clerk provided an affidavit, under Kentucky Revised Statutes § 431.076(6),[1] stating that "[n]o record exists on the matter referenced in [the] subpoena." R. 101-4, PageID 841. Taylor filed a motion to show cause as to why the Gallatin Circuit Court Clerk and the AOC should not be held in contempt for failing to produce the court file, claiming that "counsel for AOC . . . acknowledged . . . that the documents exist" and that Kentucky Revised Statutes § 431.076(7)[2] requires the Gallatin Circuit Court Clerk to maintain the court files. R. 101, PageID 811. The district court denied the motion but said that Taylor could subpoena witnesses from the AOC and the Gallatin Circuit Court Clerk's Office to testify at trial regarding Howell's court file.

Taylor later filed a renewed motion to show cause, claiming that he was entitled to the documents under Rule 17 and the Confrontation Clause.

---

[1]After an offense is expunged, "the proceedings in the matter shall be deemed never to have occurred. . . . The court and other agencies shall reply to any inquiry that no record exists on the matter." Ky. Rev. Stat. Ann. § 431.076(6).

[2]"Inspection of the records included in the order may thereafter be permitted by the court only upon petition by the person who is the subject of the records and only to those persons named in the petition." *Id.* § 431.076(7).

As Taylor sought additional information about Howell's criminal history, the government acted to limit the scope of the information that Taylor could present at trial. Specifically, the government moved in limine to limit the scope of Taylor's cross-examination of Howell. In its motion, the government asked the court to "exclude any discussion of the underlying facts" of Howell's dismissed and expunged offenses, which the government claimed would be unfairly prejudicial under Federal Rule of Evidence 403. R. 98, PageID 800.

The district court granted the government's motion in part and denied Taylor's renewed show-cause motion. The court held that Rule 403 barred testimony about the nature of Howell's misdemeanor offenses and "any other speculative underlying facts that may support Taylor's alternative suspect/mirrored offenses theory . . . because any probative value [was] substantially outweighed by a danger of unfair prejudice and of confusing the jury." R. 114, PageID 1001. Still, the court said that it would allow Taylor to cross-examine Howell about the penalties he faced for his 2022 drug charge, the penalty he would have faced had the state court not dismissed both the felon-in-possession charge and the motion to revoke diversion, and whether Howell sought or received any benefit in exchange for his testimony. The court denied Taylor's renewed show-cause motion because "[w]ith the scope of the inquiry allowed, the jury [would] have sufficient information to assess Howell's potential bias, prejudice, or motivation to testify." *Id.* The court also determined that the requested documents were unnecessary because Taylor already had access to myriad information to impeach Howell.

**B.**

The case proceeded to trial. Howell testified that he had no criminal history until March 2022, when he was charged in state court with felony possession of a controlled substance and two misdemeanors. While the charges were pending, Howell met with federal agents about Taylor's case and asked them if he would "get anything out of . . . answering their questions" and cooperating with the investigation. R. 145, PageID 1442. Howell admitted that he told the agents that he would "testify at any kind of proceeding against" Taylor in exchange for a benefit. *Id.* at 1464. Howell pleaded guilty to the charges and entered into an eighteen-month diversion agreement.

Then, in January 2023, Howell was charged with possession of a handgun by a convicted felon, after which the state prosecutor moved to revoke Howell's diversion agreement. A few days after Howell testified at Taylor's first trial, the state court dismissed his felon-in-possession charge, and the state prosecutor dismissed the motion to revoke the diversion agreement. Some months later, Howell completed his diversion, leading to the dismissal and expungement of his possession conviction and two misdemeanors. As a result, Howell was no longer a convicted felon when he testified at Taylor's second trial.

Howell also testified that the maximum sentences for his felony drug-possession conviction and felon-in-possession charge would have been three years' imprisonment and ten years' imprisonment, respectively. Howell further testified that had the state prosecutor not withdrawn the motion to revoke the diversion, he would have been "subject to potentially 18 months in prison" and would be "a permanent convicted felon." *Id.* at 1467. Although Howell agreed that he avoided prison time, he testified that there was no quid pro quo "[d]espite the timing" of his cooperation and the dismissal of the felon-in-possession charge. *Id.* at 1468.

The jury again convicted Taylor on all counts. After the district court sentenced Taylor, this appeal followed.

**II.**

On appeal, Taylor argues that the district court erred by: (1) refusing to order the AOC and Gallatin Circuit Court Clerk to produce Howell's criminal file, and (2) prohibiting Taylor from cross-examining Howell about the underlying facts of his felony drug-possession conviction and felon-in-possession charge. According to Taylor, both actions violated the Confrontation Clause.

We review alleged Confrontation Clause violations de novo. *United States v. Blake*, 166 F.4th 611, 622 (6th Cir. 2026). If a constitutional violation occurred, we must consider whether "the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

**III.**

The Confrontation Clause guarantees criminal defendants the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right protects two things. First, it allows defendants an opportunity for a "face-to-face confrontation" at trial with the witnesses against him. *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). Physically confronting adverse witnesses is "essential to a fair trial in a criminal prosecution." *Pointer v. Texas*, 380 U.S. 400, 404 (1965). Second, the right of confrontation guarantees "an *opportunity* for effective cross-examination." *United States v. Owens*, 484 U.S. 554, 559 (1988) (quotation omitted). The Supreme Court has described the cross-examination guarantee as "the main and essential purpose of confrontation." *Van Arsdall*, 475 U.S. at 678 (citation modified).

This appeal once again implicates the cross-examination guarantee. The Confrontation Clause does not entitle a defendant to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). Instead, a defendant states a Confrontation Clause violation "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Van Arsdall*, 475 U.S. at 680 (citation modified). "Prototypical forms of bias include: (1) the witness's criminal history or status as a parolee or probationer; (2) any immunity or plea deals involving the witness; (3) the witness's inconsistent statements; and (4) other prejudices, or ulterior motives, that can undermine the witness's reliability." *Taylor*, 127 F.4th at 1013 (citation modified).

**A.**

We consider first whether the district court's refusal to order the production of Howell's criminal file violated Taylor's Confrontation Clause rights. Taylor argues that without Howell's criminal file, he could not effectively cross-examine Howell. Specifically, Taylor claims that he needed to investigate "whether there was *written evidence* of an agreement between Howell and

the state prosecutors" offering leniency in exchange for Howell's testimony against Taylor. D. 18 at p.22. We reject this argument.

"The right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725 (1968); *see Ford v. Curtis*, 277 F.3d 806, 811 (6th Cir. 2002). It is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality opinion). "Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id.*

The right to confrontation does not create a concomitant right to pretrial discovery. On this point, *Ritchie* is instructive. There, the defendant served a subpoena to obtain records from an agency charged with investigating child abuse, but the agency refused to comply with the subpoena. *Id.* at 43. The defendant argued that, without the records, he could not effectively cross-examine his daughter who had accused him of abuse. *Id.* at 51. A four-justice plurality determined that the right to confront witnesses does not "include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53. Although the plurality recognized that "the right to cross-examine includes the opportunity to show that a witness is biased," the agency's refusal to produce the records did not prevent the defendant from cross-examining his daughter. *Id.* at 51, 54. So the plurality concluded that no Confrontation Clause violation occurred. *Id.* at 54.[3]

So too here. Taylor's inability to obtain Howell's criminal file from state-court officials does not infringe Taylor's confrontation rights. *See id.* Taylor was able to confront Howell during his trial. And, through counsel, Taylor had the opportunity to cross-examine Howell, including about his criminal history and any incentives for his testimony.

---

[3]The Supreme Court has not definitively determined whether the Confrontation Clause creates any right to discovery. In *Ritchie*, four justices concluded that the Clause creates no such right, 480 U.S. at 51–54, three justices concluded that the denial of access to certain materials and information before trial could violate the Confrontation Clause, *id.* at 61–66 (Blackmun, J., concurring in part and concurring in the judgment); *id.* at 66–72 (Brennan, J., dissenting, joined by Marshall, J.), and two justices did not weigh in.

Taylor says he needed access to the file to "meaningfully test Howell's bias or credibility." D. 18 at p.25. To be sure, "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Court has never held, however, that this "rigorous testing" can take whatever form a defendant may choose.

Defendants are not left without devices to try to obtain documents and witnesses in their favor. Federal Rule of Criminal Procedure 17 permits defendants to subpoena "books, papers, documents, data, or other objects the subpoena designates" if they meet certain requirements. Fed. R. Crim. P. 17(c)(1); *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). And the Sixth Amendment's Compulsory Process Clause gives defendants the right to subpoena "witnesses in [their] favor." U.S. Const. amend. VI; *Washington v. Texas*, 388 U.S. 14, 18 (1967). But Taylor does not lodge a Rule 17 challenge or a compulsory-process challenge. In fact, Taylor subpoenaed two individuals from the Gallatin Circuit Court Clerk's Office but did not call those individuals as witnesses at trial.

In sum, we conclude that the Confrontation Clause does not grant a defendant a pretrial right to compelled discovery of documents that might assist him in cross-examining a witness. *See Ritchie*, 480 U.S. at 52–54. In so concluding, we join several of our sister circuits. *United States v. Fattah*, 914 F.3d 112, 179–80 (3d Cir. 2019); *United States v. Osmakac*, 868 F.3d 937, 956–57 (11th Cir. 2017); *United States v. Celis*, 608 F.3d 818, 830–31 (D.C. Cir. 2010) (per curiam); *United States v. Shrake*, 515 F.3d 743, 746 (7th Cir. 2008); *Tapia v. Tansy*, 926 F.2d 1554, 1559–60 (10th Cir. 1991). *But cf. United States v. Arias*, 936 F.3d 793, 799–800 (8th Cir. 2019).

**B.**

We next address whether the district court violated Taylor's right to confront Howell by limiting cross-examination. The Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Van Arsdall*, 475 U.S. at 678–79 (quotation omitted). But the

Confrontation Clause does not prevent "a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679. Trial courts have "wide latitude . . . to impose reasonable limits" on cross-examination to avoid "harassment, prejudice, confusion of the issues," or repetitive or "marginally relevant" interrogation. *Id.*

"The key issue is whether the jury had enough information" about the witness's motives for testifying "despite the limits placed on cross-examination." *United States v. Callahan*, 801 F.3d 606, 624 (6th Cir. 2015) (quotation omitted). "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *Id.* (quotation omitted).

We use a three-step process to analyze whether a trial court has violated a defendant's confrontation rights by limiting cross-examination. *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000).[4] At the first step, we must decide whether the district court limited Taylor's ability to cross-examine Howell about his "bias, prejudice[,] or motive to testify." *See id.* If so, we move to the second step to consider whether, "despite the limits placed on" the cross-examination, the jury had "enough information" to assess Taylor's "theory of bias or improper motive." *See id.* If the jury lacked sufficient information to assess the theory, we go to the third step, which is "a balancing test" that weighs the government's interests against Taylor's right to confront Howell. *See id.*

We need not proceed past the first step. The district court did not err by prohibiting Taylor from cross-examining Howell about the underlying facts and circumstances of his 2022 drug-possession conviction and his 2023 felon-in-possession charge. The court allowed Taylor to try to establish Howell's bias, prejudice, or motive to testify through cross-examination. *See id.* Taylor theorizes that Howell might have believed that "the police would have viewed him as the next best suspect" who possessed the incriminating bag at issue unless he testified against Taylor. D. 18 at pp.30–31. But the district court did not prohibit Taylor from asking Howell

---

[4]Taylor argues that *Boggs* is not good law. Although subsequent opinions have criticized *Boggs*'s holding that cross-examination as to general credibility is not protected, the three-step analysis has been reaffirmed in subsequent binding cases. *See Blake*, 166 F.4th at 622.

about his possible status as a suspect. The court's refusal to allow Taylor's inquiry into the underlying facts of his criminal charges to prevent prejudice or confusion of the issues under Federal Rule of Evidence 403 fell within its "wide latitude . . . to impose reasonable limits" on cross-examination. *See Van Arsdall*, 475 U.S. at 679.

The district court gave Taylor significant leeway in his cross-examination of Howell. Unlike in Taylor's first trial, the district court allowed Taylor to cross-examine Howell about: (1) his conviction for felony possession of a controlled substance; (2) the resulting diversion agreement; (3) his felon-in-possession charge; (4) the dismissal of the felon-in-possession charge just days after he testified at Taylor's first trial; (5) the penalties Howell faced for his felony drug-possession conviction; (6) the penalties he would have faced if the state prosecutor had not dismissed his felon-in-possession charge and allowed him to complete his diversion agreement; and (7) whether Howell sought or received leniency for testifying against Taylor.

Taylor took full advantage. Taylor cross-examined Howell extensively about his drug-possession conviction and felon-in-possession charge. He elicited testimony that Howell faced prison time for possession of a controlled substance but received eighteen months of diversion. Howell testified that his felon-in-possession charge was dismissed, and that he was allowed to complete his diversion program. Howell also testified to the penalties he faced had he not completed his diversion agreement and that he sought "some benefit" in exchange for cooperating in Taylor's case. R. 145, PageID 1459. This testimony addressed "prototypical form[s] of bias," *see Van Arsdall*, 475 U.S. at 680, and covered the very topics we determined the district court should have allowed on cross-examination in Taylor's previous trial, *see Taylor*, 127 F.4th at 1016.

Taylor's reliance on *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976), does not change things. There, the defendant was charged with distributing heroin and cocaine. *Id.* at 24. A police officer arranged the drug sales that became the subject of the defendant's charges. *Id.* By trial, the officer "had been suspended because he was suspected of using hard drugs himself and had refused to submit to a urine test." *Id.* at 26. The district court did not permit the defendant to question the officer about the reason for his suspension. *Id.* at 25. We reversed, concluding that the defendant should have been permitted to cross-examine the officer about the

reason for his suspension for two reasons. First, the questioning could have shown possible bias or a motive to testify because the officer could have believed a successful prosecution of the defendant would lead to the lifting of his suspension. *Id.* at 26. And second, the jury was entitled to know that the witness with whom the defendant participated in drug sales also had been accused of using drugs, which goes to the witness's credibility. *Id.*

*Garrett* is distinguishable. Taylor has not attempted to argue that Howell was on drugs during the incident. Nor did he ask Howell whether he was afraid that he would be prosecuted for the items in the bag. Also, Taylor sought to prompt testimony about the facts underlying Howell's criminal charges to suggest that Howell may have committed the criminal acts attributed to Taylor, not to show bias, prejudice, or a motive to testify, as was the case in *Garrett*. Finally, the jury heard that Howell was charged with drug possession, while the jury in *Garrett* was not told why the officer was under suspension.

As we have explained, the key issue is whether the jury had sufficient information to assess Howell's alleged bias and motive for testifying against Taylor. We conclude that it did. *See, e.g.*, *Callahan*, 801 F.3d at 624 (holding that the jury had sufficient information to evaluate a witness's motive and bias when the court allowed testimony "about whether [the witness] was facing more time under the substantive forced labor charge as opposed to the conspiracy charge" and whether he "expected a reduced sentence as a result of his cooperation"); *United States v. Fields*, 763 F.3d 443, 464–65 (6th Cir. 2014) (same conclusion based on testimony about a witness's prior convictions and that "he was at that time facing charges in state court amounting to up to 96 years' imprisonment").

"[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness'[s] testimony." *Fensterer*, 474 U.S. at 22. Taylor got what the Constitution guarantees: the opportunity to effectively cross-examine Howell.

**IV.**

For these reasons, we **AFFIRM** the district court's judgment.

_____

**CONCURRENCE**

_____

HELENE N. WHITE, Circuit Judge, concurring.  I agree that Taylor is not entitled to further relief and that his rights under the Confrontation Clause were not violated.  However, because the Supreme Court has not yet determined whether the Confrontation Clause encompasses any right to pretrial discovery, Majority Op. at 7 n. 3; *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion), and we all agree that Taylor was able to fully test Howell's credibility at trial, I would not foreclose the possibility that in a different case the denial of access to crucial information might so prejudice a defendant's ability to cross-examine a witness as to violate the Confrontation Clause.